MARÍA MAESO DE SANDOVAL, demandante y apelada, *v.* LUIS FELIPE ORTIZ SANDOVAL, demandado y apelante.

No. 5646.—*Sometido:* Noviembre 30, 1932. *Resuelto:* Diciembre 2, 1932.

* NOTA: Véase el prefacio.

*M. Cruz Horta,* abogado del apelante; *L. Toro Cabañas,* abogado de la apelada.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Versa este pleito sobre alimentos. María Maeso, casada con Luis Felipe Ortiz Sandoval, demandó a su esposo en reclamación de ciento cincuenta dólares mensuales para sufragar los gastos de alimentación, habitación, vestido, medicinas y diversiones lícitas de ella y del único hijo habido en el matrimonio. Alegó que desde hacía más de un año su esposo la llevó a la casa de su padre, sin ocuparse más de ella y que allí nació su único hijo y su esposo nunca les envió cantidad alguna para alimentos.

Aceptó el demandado en su contestación el matrimonio, el nacimiento del hijo y la separación, pero negó el abandono. Como defensas especiales alegó que no existían bienes de la sociedad de gananciales, que los privativos del demandado estaban fuertemente gravados y que estaba dispuesto a recibir y mantener en su hogar a su esposa y a su hijo.

Fué el pleito a juicio. Ambas partes aportaron prueba y la corte dictó finalmente su sentencia condenando al demandado a pagar a la demandante para ella y para el legítimo hijo de ambos una pensión alimenticia mensual de cincuenta dólares.

No conforme el demandado apeló. Señala en su alegato la comisión de cuatro errores.

Por el primero sostiene que la corte no apreció debidamente la prueba. No existe. Hemos examinado dicha prueba

consistente en las declaraciones de la demandante y del demandado, las del padre de la demandante y las de los otros testigos del demandado y de ellas surge claramente la causa de acción de la demandante resuelto el conflicto que entre las mismas se advierte en puntos esenciales en favor de la prueba de la demandante.

Se trata de un matrimonio joven que quizá pudo avenirse y seguir cumpliendo, a virtud de concesiones y respeto mutuos, sus deberes en la vida.

El cuadro que presenta no sólo la prueba de la demandante si que la misma del demandado es el de una esposa que al quedar sola en la casa lloraba y quiso suicidarse. ¿Por qué? Aunque hay indicios en los autos, el motivo no consta perfectamente claro de los mismos.

Lo cierto es que la mujer fué a vivir finalmente a la casa de su padre. Ella dice que el marido la llevó y la dejó allí sin procurarla más. El admite finalmente que la llevó, pero insiste en que ella se fué voluntariamente. Admite también que la dejó de procurar por dos meses para darle una lección y que luego al proponerle por medio de un amigo que volviera con él, ella no quiso y así continuaron las cosas.

El hecho evidente es que ella quedó en la casa de su padre y allí dió a luz a su único hijo que tenía, a la fecha del juicio en la corte de distrito, unos once meses, y que el esposo jamás fué a ver a su esposa o a su hijo y nada les envió para sus alimentos.

Se entiende por alimentos todo lo que es indispensable para el sustento, habitación, vestido y asistencia médica, según la posición social de la familia, y están obligados a dárselos recíprocamente, entre otros, los cónyuges y los ascendientes y descendientes legítimos. Cuando procedan y sean dos o más los obligados a prestarlos, corresponderá la obligación en primer término al cónyuge, en segundo a los descendientes del grado más próximo, en tercero a los ascendientes del grado más próximo y por último a los hermanos. El padre y la madre tienen para con sus hijos no emanci-

pados, entre otros, el deber de alimentarlos. Véanse los artículos 142, 143, 144 y 153 del Código Civil, ed. 1930.

De acuerdo, pues, con los hechos y la ley, la obligación del cónyuge y padre demandado en este caso es evidente, ineludible.

■ Como segundo error sostiene el apelante que la corte estuvo equivocada al consignar en su opinión "que las rentas como el salario están incursos en el concepto de bienes."

En primer lugar los errores no se dan contra los fundamentos sino contra la parte dispositiva de la sentencia. Aunque sus fundamentos sean erróneos, si la sentencia apelada se sostiene por otros verdaderos, no será revocada sino confirmada en apelación.

Pero aunque la conclusión de la corte tuviera que ser examinada por considerarla parte de la sentencia misma, diremos que no estuvo equivocado el juez sentenciador al tomar en cuenta la renta que percibía el demandado de sus bienes privativos y el producto o salario que obtenía a virtud de su trabajo en el negocio a que se dedicaba, para fijar la cuantía de la pensión, y ése es todo el alcance de la conclusión de la corte que se considera errónea.

■ El tercer error se formula así: "La corte de distrito cometió error al no dar aplicación al artículo 148 del Código Civil."

Dicho artículo prescribe:

"Artículo 148.—El obligado a prestar alimentos podrá, a su elección, satisfacerlos, o pagando la pensión que se fije, o recibiendo y manteniendo en su propia casa al que tiene derecho a ellos."

Conocemos lo que fué alegado como defensa especial. En el juicio declaró el demandante que su hogar siempre estaba dispuesto para recibir a su esposa y a su hijo. La demandante sostuvo en su declaración que ni directa ni indirectamente su esposo la había llamado de nuevo a su hogar. Pero es lo cierto que de su actitud se desprende que su decisión es no volver en las anteriores condiciones. Por lo menos

expresamente manifestó que tendría que pensarlo mucho. Aseguró que después de separados, su marido había llevado otras mujeres al hogar. Pesando sus contestaciones, se observa una dignidad de mujer que no puede abatirse, ni debe serlo como al parecer se pretende en este caso, esto es, obligándola a volver al hogar sin condiciones como cuestión de derecho o a dejar de percibir los alimentos fuera de él. La ley no tuvo en mente sumisiones contrarias al propio honor y fines del matrimonio. Desde hace años dijo esta corte en el caso de *Moll* v. *Llompart,* 17 D.P.R. 694, 701:

"La oferta del marido de atender a las necesidades de su esposa en su propia casa, puede ser rehusada cuando razones de orden legal, moral o social impidan su aceptación, o cuando exista causa razonable justificada para rechazar aquella oferta. Según doctrina del Tribunal Supremo de España consignada en sentencia de 5 de julio de 1901, 'el derecho de opción que el artículo 149 del Código Civil Español (218 del Código Civil de Puerto Rico) concede al obligado a prestar alimentos para satisfacerlos, abonando la pensión o recibiendo y manteniendo en su propia casa al alimentista, no es absoluto o inflexible, sino que se halla subordinado a la doble condición de que el deudor por tal concepto tenga casa o domicilio propio, y de que no exista estorbo alguno legal o moral para que el acreedor se tralade a ella, y reciba en la misma el conjunto de ventajas o socorros, así naturales como civiles, que se comprenden en la acepción jurídica de la palabra alimentos, pues faltando cualquiera de esas condiciones, la elección se hace imposible de hecho o de derecho, y la obligación alimenticia tiene necesariamente que cumplirse en la primera de las formas indicadas.' En igual sentido se pronuncian las autoridades americanas. (Véase el tomo 21 de Cyc., pág. 1150.)"

Por el cuarto y último error se impugna la cuantía de los alimentos.

Se demostró que los bienes del demandado le producían una renta líquida de unos cien dólares mensuales y que además contaba con el producto de su trabajo en una vaquería. ¿Qué menos pudo asignar el juez, bajo esas circunstancias, que cincuenta dólares mensuales para la esposa y el hijo?

*Debe confirmarse la sentencia recurrida.*