ANA CELIA PADOVANI, demandante y apelada, *v.* ANGEL IRIZARRY, demandado y apelante.

Núm. 7650.—*Sometido:* Junio 3, 1938. *Resuelto:* Julio 28, 1938.

*Enrique Báez García,* abogado del apelante; *J. A. Surís Agrait,* abogado de la apelada.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Cuatro recursos de apelación se han tramitado conjuntamente en estos autos.

En junio 25, 1937, Ana Celia Padovani reclamó alimentos de su esposo Angel Irizarry por medio de demanda presentada en la Corte de Distrito de Mayagüez. Tramitada la reclamación, la corte la resolvió por sentencia de septiembre 20, 1937, condenando al demandado a pasar a la demandante una pensión alimenticia de treinta dólares mensuales. El demandado apeló.

El propio día en que radicó su escrito de apelación, o sea el 23 de septiembre de 1937, el demandado. archivó una moción solicitando la nulidad del embargo trabado sobre sus bienes para garantizar la pensión, y dos días después otra pidiendo que se dejara sin efecto la sentencia. El 4 de octubre siguiente solicitó la demandante la eliminación de ambas mociones y pidió que se citara al demandado para mostrar causa por qué no debía castigársele por desacato. Oyó la corte a las partes y en octubre 26 declaró sin lugar las mociones del demandado, y condenó a éste por desacato en noviembre 2 siguiente. De las dos resoluciones adversas y de la sentencia condenatoria, apeló también el demandado para ante este tribunal.

Ambas partes han presentado largos alegatos cubriendo todos los puntos envueltos en los cuatro recursos. Sin embargo, según la opinión que del caso hemos formado, sólo habrá que considerar y resolver el primer señalamiento de error en el primero de los recursos para decidirlos todos en debida forma.

Ese primer señalamiento se refiere a la omisión por parte de la corte sentenciadora de dar aplicación a lo dispuesto en el artículo 148 del Código Civil, ed. 1930.

En la demanda se alegó que la demandante, de diez y seis años de edad, contrajo matrimonio con el demandado Angel Irizarry en diciembre 19, 1936; que los cónyuges vivieron juntos bajo el mismo techo desde entonces hasta marzo 16, 1937 "en que la demandante fué echada de la casa por el demandado" yéndose a vivir con sus padres; que la demandante está necesitada de la ayuda del demandado que éste le niega, y que el demandado tiene casas que le producen una renta de cincuenta y ocho dólares mensuales y una tienda de la que obtiene setenta y dos dólares mensuales de beneficios, pudiendo, por tanto, pasarle una pensión de sesenta dólares mensuales.

En su contestación admitió el demandado el matrimonio, la vida en compañía de su esposa a partir del mismo, y la separación, pero negó que ésta se debiera a que él echara de su casa a la demandante siendo lo cierto que ella se fué por su propia voluntad. Admitió su deber de sostenerla, pero negó que estuviera en condiciones de pasarle sesenta dólares mensuales y expuso el montante de sus bienes y recursos. Alegó que estaba dispuesto a recibir a su esposa "en el hogar conyugal que establecieron el día de su matrimonio."

Fué el pleito a juicio. Cuando terminó la evidencia de la demandante dijo el demandado por su abogado:

"Nosotros vamos a solicitar de acuerdo con el artículo 148 del Código Civil de Puerto Rico, que la Corte dicte sentencia contra la demandante, condenándole a que ésta vaya al hogar del demandado, a convivir con éste, para allí darle todos los alimentos, médico, medicinas y demás."

Y contestó el juez;

"La Corte deja la cuestión legal pendiente para resolverla en su fondo."

Introdujo su evidencia el demandado y la corte al decidir el asunto en la forma que conocemos, se expresó, en parte, como sigue:

"De las declaraciones prestadas, tanto por la demandante como por el demandado, la corte ha llegado a la conclusión de que por la diferencia de edad entre el demandado y la demandante, por el carácter y temperamento opuestos, o por cualquiera otra circunstancia desconocida para la corte entre los cónyuges litigantes, no existieron buenas relaciones de armonía conyugal entre ellos, y por las discusiones acaloradas o consejos y reprensiones del demandado, la demandante tuvo necesidad de abandonar el hogar puéstole por el demándado e irse a vivir con sus padres, y en esta situación y de acuerdo con el apartado primero del Art. 144 del Código Civil vigente, edición de 1930, el demandado está obligado a dar alimentos a la demandante, como su cónyuge."

La corte sentenciadora no hizo referencia expresa en su opinión al artículo 148 del Código Civil, ed. 1930, limitándose a aplicar el 144 que impone la obligación de prestar alimentos en primer término al cónyuge cuando proceda y sean dos o más los llamados a cumplirla.

Dicho artículo 148 dispone:

"El obligado a prestar alimentos podrá, a su elección, satisfacerlos, o pagando la pensión que se fije, o recibiendo y manteniendo en su propia casa al que tiene derecho a ellos."

Comentando Manresa el artículo 149 del Código Civil Español, igual al 148 del nuestro, dice:

"Comparando los términos de dicho artículo 78 de la ley de Matrimonio civil que comentamos, se observa la gran novedad introducida en este punto por el Código, pues lo que antes era una mera excepción, admitida en beneficio del alimentante pobre para evitar que se le compeliese a cumplir dicha obligación aun con perjuicio de sus propias necesidades, se ha convertido ahora en un derecho, que en todo caso puede ejercitar aunque tuviere medios sobrados para suministrar los alimentos en metálico o fuera de su casa, toda vez que a su elección deja el Código el hacerlo en una u otra forma. De lo cual se deduce que si el alimentista no quiere sujetarse a vivir en la casa del alimentante, perderá su derecho a los alimentos.

"La razón de esta reforma es bien clara y fácil de comprender, pues si en algunas ocasiones puede producir complicaciones y disgustos el llevar un pariente a la casa del obligado a suministrar los alimentos, en otras puede ser quizás el medio de corregir y enmendar al necesitado de ellos por la dependencia y obligación en que éste se constituye de sujetarse a las reglas del hogar del que le recoge y ampara; y esta sola consideración bastaría para justificar la innovación introducida.

"Sin embargo, no debe aceptarse en absoluto el principio consignado en este artículo, pues existen casos en que el alimentante no puede hacer uso del derecho de elección concedido en el mismo, por ser imposible que el alimentista viva en su casa y compañía. . . . .

.    .    .    .    .    .    .    .    .

"Aparte estas declaraciones generales sobre el artículo, el Tribunal Supremo, interpretándole, ha tenido que limitar el alcance de ese derecho de opción para no hacerle incompatible con otros derechos, como lo prueban las sentencias de 5 de febrero de 1878, antes del Código, y las posteriores a éste de 25 de noviembre de 1899, 5 de julio de 1901 y 31 de enero de 1902.

"Como regla general, establece el Tribunal Supremo en la de 5 de julio de 1901, que el derecho de opción que el art. 149 del Código Civil concede al obligado a prestar alimentos para satisfacerlos, abonando la pensión o recibiendo y manteniendo en su propia casa al alimentista, no es absoluto o inflexible, sino que se halla subordinado a la doble condición de que el deudor por tal concepto tenga casa o domicilio propio, y de que no exista estorbo alguno moral o legal para que el acreedor se traslade a ella y reciba en la misma el conjunto de ventajas o socorros, así naturales como civiles, que se comprenden en la acepción jurídica de la palabra *alimentos,* pues faltando cualquiera de esas condiciones, la elección se hace imposible de hecho o de derecho, y la obligación alimenticia tiene necesariamente que cumplirse en la primera de las formas indicadas." 1 Manresa. Comentarios al Código Civil Español, 686 y siguientes, de la 5a. edición.

Y esta propia Corte Suprema en los casos de *Moll* v. *Llompart,* 17 D.P.R. 694 y *Maeso* v. *Ortiz,* 44 D.P.R. 162, sostuvo que la oferta del marido de atender a las necesidades de su esposa en su propia casa, puede ser rehusada cuando razones de orden legal, moral o social así lo justifican, y concluyó, analizando las circunstancias concurrentes puestas

de relieve por la prueba, que la negativa de la mujer a recibir alimentos volviendo a vivir con su esposo estaba bien fundada, siendo por tanto ineficaz la opción que hizo el marido.

¿Concurren en este caso circunstancias de orden legal, moral o social que hagan imposible que se ponga en práctica la opción? Hemos examinado los autos y la pregunta debe contestarse a nuestro juicio en la negativa.

Hemos visto que el juez de distrito llegó a la conclusión de que "la demandante tuvo necesidad de abandonar el hogar puéstole por el demandado", y sin embargo véase el resultado de la evidencia tal como lo expone el propio juez en su opinión:

"....la corte estima probados los siguientes hechos: que la demandante y el demandado son casados entre sí, existiendo entre la demandante y el demandado una considerable diferencia de edades, pues mientras la demandante cuenta 16 años y ya tiene más de uno de casada, el demandado tiene más de 50 años; que al poco tiempo de casados comenzaron los cónyuges a tener serias disensiones conyugales, alegando la demandante que éstas ocurrían por culpa del demandado que no la trataba bien, y alegando el demandado que éstas discusiones frecuentes obedecían a que él reprendía a su esposa y ésta no quería tomar sus consejos;...."

La diferencia de edades por sí sola no es motivo que justifique la separación. Era conocida de la demandante cuando contrajo matrimonio. No es aconsejable en verdad el que se contraigan esa clase de enlaces, pero la realidad es que se contraen y que la experiencia demuestra que pueden subsistir. En cuanto a las "serias disensiones conyugales" a que se refiere el juez en su declaración de hechos probados, nada se encuentra en la declaración de la demandante en el juicio y nada tampoco en la de su único otro testigo, su padre Rafael Padovani. Es en la prueba del demandado, en su propia declaración que se dice:

"....que la separación se debió a que ella no estaba de acuerdo con su gobierno, con lo que él le aconsejaba, con el gobierno de la casa, y que siempre le decía que ella era como Dios la había hecho,

y que siempre le sostuvo eso. Que él tiene como cuarenta y siete años, que hace como seis o siete meses están casados....que con ocasión que ella dejó el hogar envió a la tienda por provisiones, y se las despachó el dependiente; que él nunca en ninguna ocasión se negó a prestarle atención'' excepto cuando ''fué a buscar un dinero para un *bolipool* y le dijo que no y a ella le dió coraje y no volvió a la tienda, diciéndole miserable; que después que ella dejó la casa hizo gestión cerca de ella para que volviera, y que eso lo hizo por una sola vez porque ella le contestó muy mal al individuo que mandé y le dijo que no volvía más nunca; que él le mandó a decir a ella que deseaba hablarle porque ella no había tenido razón, y porque él quería armonizar. Que ella es una muchacha que tiene una madre que es una mujer muy trabajadora; que después que él estuvo en la casa de la demandante, le molestaba, era incorregible ...que en todo tiempo él ha estado dispuesto y está en condiciones y presto a recibir en su hogar a la demandante, su esposa Ana Celia Padovani, y a proporcionarle en el mismo todos los medios de vida, y que eso mismo le dijo al abogado de la demandante; que en todo tiempo ha estado dispuesto porque es un hombre de capacidad; que le llamó la atención a su padre diciéndole que ella era una muchacha joven, que si quería podía ser buena esposa, que era la única mujer con quien pretendía casarme porque la quería, y que a los padres los quería porque son buenas personas. A la madre la quería, pero ella es una muchacha incorregible aunque le tiene aprecio.''

Con excepción de la petición de dinero por parte de la esposa para un *bolipool* y de la negativa del esposo por virtud de la cual la esposa se enfadó y llamó al esposo miserable, no surge de la declaración hecho concreto alguno que permita juzgar sobre la seriedad o gravedad de los disgustos. Todo lo demás son conclusiones y si el esposo dice eso no obstante que está dispuesto a recibir a la esposa a quien quiere en su hogar, no vemos qué fuerza puedan tener en contra suya.

No hay la más leve evidencia o imputación de la ocurrencia de algo inmoral que impida la unión de los cónyuges en este caso. Ni siquiera prejuicios sociales se manifiestan o diferencias de raza, religión o educación. Todo induce a creer que bien aconsejada la joven esposa podría cumplir el

difícil y quizá penoso deber que se impuso al contraer matrimonio, y a que se cumpla ese deber y no a consagrar separaciones por motivos insuficientes, deben tender los tribunales.

Por virtud de todo lo expuesto se impone la revocación de la sentencia apelada, cayendo por su base también el embargo trabado a virtud de su pronunciamiento y la condena de desacato.

Ahora bien, como en los autos encontramos lo que sigue, ocurrido cuando declaraba la demandante como testigo,

"Preguntada la testigo que qué le pasó a ella para que se retirara, el abogado del demandado se opuso resolviendo la Corte que era inmaterial. Preguntada nuevamente la testigo si ese día que ella dice que se fué de la casa que qué fué lo que le pasó, volvió nuevamente a oponerse el abogado del demandado por ser inmaterial, resolviéndolo la Corte así y agregando además que eso sería prueba para el divorcio, y que se limitara la prueba a ver la posición de esta señora y la posición económica del demandado."

Y como de ello pudiera deducirse que si la evidencia de la demandante no fué más completa se debió a la oposición del demandado sostenida por la corte, no parece justo que se cierre por completo el caso sin dar a la demandante otra oportunidad de demostrar los motivos que la llevaron a la separación ya que podrían ser de tal índole que hicieran en verdad imposible el ejercicio de la opción que la ley da al marido.

De ahí que la revocación deba decretarse devolviendo el caso para ulteriores procedimientos que no sean inconsistentes con lo expuesto en esta opinión, no sin que dejemos de advertir a la esposa que los litigios son costosos y que las pequeñas fortunas—como parece que es en su mínima expresión la acumulada por su esposo antes del contrato matrimonial,—no resisten sus gastos, de suerte que no sólo con su actitud quizá innecesariamente esté la demandante destruyendo su propio hogar si que la fuente de donde podría emanar el alimento que pide.

El Juez Asociado Señor Travieso no intervino.